155 P.3d 149 (2007)
CITY OF AUBURN, a municipal corporation of the State of Washington, Respondent,
v.
Teresa A. HEDLUND, Petitioner.
Nos. 51791-1-I, 55065-9-I.
Court of Appeals of Washington, Division 1.
March 12, 2007.
*150 Daniel Brian Heid, Auburn, WA, for Appellant.
Matthew Valen Honeywell, Attorney at Law, Seattle, WA, for Respondent.
BAKER, J.
¶ 1 Teresa Hedlund was charged as an accomplice to reckless driving and DUI, furnishing alcohol to a minor, and furnishing tobacco to a minor. At the close of the City's evidence, Hedlund moved to have the reckless driving and DUI charges dismissed, arguing that under RCW 9A.08.020(5) she was a victim, and thus could not be an accomplice. The court dismissed. The City sought a continuance and immediate writ of review of the dismissal by the superior court. The superior court reversed and trial continued.
¶ 2 Hedlund was acquitted of reckless driving as an accomplice, and convicted of the remaining charges. Hedlund appealed to the superior court. The superior court rejected most of Hedlund's challenges, but ruled the trial court abused its discretion in several of its evidentiary rulings, and in declining to sever the furnishing tobacco to a minor charge, and remanded for a new trial. She then sought review of the superior court's reversal of the municipal court's original dismissal of the DUI and reckless driving charges. The City also sought review of the superior court's holdings on severance of charges and certain evidentiary rulings. We granted review, and reverse Hedlund's conviction of DUI as an accomplice. Our ruling renders the issues addressed in the City's cross-petition moot.

I.
¶ 3 Teresa Hedlund was the sole survivor of a horrific one-car automobile accident which took the lives of six young people. The driver, Tom Stewart, was among those killed. Hedlund suffered severe injuries and spent months in treatment.
¶ 4 All but one of the passengers had consumed alcohol, and Stewart was speeding and driving erratically. Investigators found a video camera in the car. The video tape contained footage of the occupants of the car taken just moments before the accident. It also contained footage of a party at Hedlund's residence attended by the same people earlier that day.
¶ 5 The City charged Hedlund under RCW 9A.08.020 as an accomplice to DUI and reckless driving, and with furnishing alcohol to a minor. It later added the charge of furnishing tobacco to a minor. The City based its theory of accomplice liability in large part on Hedlund's use of the video camera, asserting that her act of video taping the occupants of the car caused Stewart to "showboat" and encouraged his reckless driving.
¶ 6 At the close of the City's evidence, Hedlund moved to dismiss the DUI and reckless driving accomplice liability charges, arguing that under the terms of RCW 9A.08.020(5), she was a victim of the crimes charged and thus could not be an accomplice. The court agreed, and orally dismissed the DUI and reckless driving charges.
¶ 7 The City immediately sought and was granted a continuance of the trial to allow it to seek a writ of review in the superior court. The superior court ruled that the writ was not barred by double jeopardy. It concluded that Hedlund was a victim of vehicular assault, but not DUI or reckless driving, and that prosecution was thus not barred under RCW 9A.08.020(5).
¶ 8 Trial resumed, and Hedlund was convicted of DUI as an accomplice, furnishing alcohol to a minor, and furnishing tobacco to a minor. She was acquitted of reckless driving as an accomplice.
¶ 9 Hedlund appealed to the superior court. The superior court rejected most of Hedlund's challenges, but ruled the trial court had abused its discretion in declining to sever the charge of furnishing tobacco to a minor, allowing the jury to hear a tape of a witness's 911 call, and admitting a portion of the video tape showing Hedlund's five-year-old daughter smoking. Concluding that the cumulative effect of the errors called for a new trial, the superior court remanded. *151 Both parties sought discretionary review, which we granted.

II.
¶ 10 Statutory interpretation is a matter of law and is reviewed de novo.[1]
¶ 11 Hedlund was charged as an accomplice under RCW 9A.08.020. The statute provides, in relevant part that:
A person is an accomplice of another person in the commission of a crime if:
(a) With knowledge that it will promote or facilitate the commission of the crime, he
(i) solicits, commands, encourages, or requests such other person to commit it; or
(ii) aids or agrees to aid such other person in planning or committing it.[[2]]
¶ 12 The City argues that, in addition to furnishing alcohol to the party-goers, Hedlund aided, promoted, and encouraged Stewart's reckless and intoxicated driving by video taping the activities at the party and in the car, and was thus complicit in Stewart's criminal acts.
¶ 13 Hedlund, in turn, points to section 5 of the statute which states that a person is not an accomplice in a crime committed by another person if he or she is a victim of that crime.[3]
¶ 14 The trial court held that, given Hedlund's extensive injuries, no jury would fail to find that she was a victim, and therefore she was not an accomplice under RCW 9A.08.020(5).
¶ 15 Hedlund argues on review that, as a victim of Tom Stewart's drunk and reckless driving, she cannot be an accomplice to his criminal acts. In support of her argument she cites to State v. Jacobs[4] for the proposition that if a statute's meaning is plain on its face, the court must give effect to that plain meaning as an expression of legislative intent.[5]
¶ 16 The City also maintains that the statute is facially clear, and cites the holding in Department of Ecology v. Campbell & Gwinn, L.L.C[6] that statutes are interpreted according to the plain and ordinary meaning of the language used.[7] The City asserts, in essence, that Hedlund is not a victim because her injuries were sustained after the acts which constituted her criminal complicity were committed. It draws a temporal distinction between the injury-causing accident and Hedlund's purported criminal acts. The City argues that RCW 9A.08.020(5) does not absolve a "victim-after-the-fact" from being an accomplice to an already committed crime, and that any actions by Hedlund that aided or promoted Stewart's illegal driving occurred before she became a victim.
¶ 17 Under the City's interpretation, the word "is" in the statutory phrase "is a victim" implies a present state distinguishable from past criminal activity. The City is understandably concerned that a strict reading of section 5 of RCW 9A.08.020 would shield injured accomplices from the reach of the law. But the City's argument is strained. As our Supreme Court noted in State v. Fjermestad,[8] a case cited by the City itself, strained and unrealistic interpretive consequences are to be avoided.[9] There is nothing in the statute to support the notion that the *152 word "is" delineates the time when a victim might sustain her injuries.
¶ 18 Moreover, the City's argument misreads that statute. The crime referred to is the crime committed by the principal, not the aiding or abetting committed by the alleged accomplice. The acts of complicity may have concluded, but the crimes of DUI and reckless driving continued without any apparent interruption.
¶ 19 To support its contention that Hedlund was not a victim, the City cites Hansen v. Department of Labor and Industries.[10] In Hansen, the appellant challenged a determination by the Board of Industrial Insurance Appeals that she was not an innocent victim of assault, and was therefore ineligible for benefits under the crime victims compensation act. The City argues that Hansen stands for the proposition that a person is not a victim of a crime if he or she caused or contributed to his or her injuries. The Hansen ruling, however, was much narrower. It addressed the availability of benefits to one who provoked or incited a criminal act which resulted in her injuries. The court found that Hansen was not an "innocent" victim; it did not strip Hansen of her victim status entirely. In fact the court noted, "Without question Hansen was the victim of a criminal assault."[11]
¶ 20 Neither is RCW 9A.08.020(5) the get-out-of-jail-free card the City fears it to be. An accomplice is not necessarily absolved of all liability for his crimes by dint of injuries sustained in the course of committing those crimes.
¶ 21 The City likens Hedlund's argument to a get-away driver in a bank robbery who is accidentally shot by the bank robber, then claiming to be a victim and thus not an accomplice. But the driver would be a victim of assault, not a victim of robbery.
¶ 22 The superior court apparently grappled with this distinction when it ruled that Hedlund was a victim, not of DUI or reckless driving, but of vehicular assault. The court observed that the King County Prosecutor's Office had declined to bring vehicular manslaughter charges against Hedlund, noting that RCW 9A.08.020 would clearly have barred prosecuting her on that charge. The court then declared that because there is no victim in the statutory definition of DUI or reckless driving, Hedlund could not be a victim as described in RCW 9A.08.020.
Miss Hedlund is a victim of vehicular assault. DUI and reckless driving aren't crimes against persons, nor are they crimes against property. There's no statutory victim for those crimes other than the State of Washington, basically. The Legislature and all of us recognize that the natural, foreseeable, probable consequences of many of those cases are accidents, injuries, and deaths, but the statutory crime itself does not contain a victim.[[12]]
¶ 23 The court was correct that accidents, injuries, and deaths are foreseeable consequences of DUI and reckless driving. But it was mistaken in finding that those are victimless crimes.
¶ 24 RCW 46.61.5055 lays out the penalty schedule for alcohol violators. It states that in exercising its discretion in setting penalties for those convicted of DUI or reckless driving, a court shall particularly consider whether the person's driving at the time of the offense was responsible for injury or damage to another or another's property.[13]
¶ 25 The statute plainly recognizes that DUI and reckless driving may potentially involve flesh and blood victims beyond the State in the abstract and the public at large. Section 5 draws no distinction between victims of DUI, reckless driving, and vehicular assault. Indeed, by requiring the court to consider whether the accused's driving caused injury to another, the statute makes it plain that vehicular assault and vehicular homicide are not the only crimes which could give rise to injuries under the statute.
¶ 26 Hedlund's injuries were the direct result of Stewart's reckless and intoxicated *153 driving. Under RCW 46.61.5055, the sentencing court would have been required to consider Hedlund's injuries in imposing sentence on Stewart had he lived and charges been brought against him. Having sustained serious injuries as a result of Stewart's criminal acts, Hedlund is Stewart's victim. RCW 9A.08.020(5) thus bars her prosecution as an accomplice.

III.
¶ 27 Hedlund also argues that the trial court's grant of her motion to dismiss the DUI and reckless driving charges precluded further proceedings on those charges because of the constitutional prohibition on double jeopardy.
¶ 28 We review the issue of double jeopardy de novo.[14]
¶ 29 The United States Constitution states that no person shall be subject for the same offense to be twice put in jeopardy of life or limb.[15] The Washington State Constitution provides that no person shall be twice put in jeopardy for the same offense.[16] Article I, section 9 of the Washington Constitution is given the same interpretation the Supreme Court gives to the Fifth Amendment.[17] The prohibition against double jeopardy protects against multiple punishments for the same offense, as well as against a subsequent prosecution for the same offense after acquittal or conviction.[18]
¶ 30 The City argues that, since Hedlund did not object on the basis of double jeopardy at trial, she is barred from asserting it on appeal. The City cites United States v. Parker[19] for the proposition that double jeopardy is a personal right which if not affirmatively pled at the time of trial will be regarded as waived.[20] However, our Supreme Court has ruled that a defendant may raise for the first time on appeal a claim that his or her double jeopardy rights were violated.[21]
¶ 31 The City also argues that Hedlund was not subject to double jeopardy because, under the standard set forth in State v. Collins,[22] the trial court's oral dismissal was not final.
¶ 32 In Collins, the court addressed the issue of oral dismissal and concluded that a ruling is final only after it is signed by the judge in the journal entry or is issued in formal court papers.[23] During Collins's trial, the court reversed its own oral dismissal of the charged crime for lack of evidence. The Supreme Court held that the reversal did not constitute double jeopardy because the earlier dismissal was oral, and not memorialized in a signed ruling or journal entry. The Collins court observed that individual judge's style of ruling vary: "Many judges will think out loud along the way to reaching the final result. It is only proper that this thinking process not have final or binding effect until formally incorporated into the findings, conclusions, and judgment."[24] The Collins court ruled that, to serve the interests of certainty, the better rule is to rely on the final written court order or written journal entry to determine the finality of a ruling.[25]
¶ 33 In both Collins, and State v. Dowling[26] *154 which Collins overruled, the trial court reversed its own prior oral dismissals. Similarly, the unpublished Washington cases citing Collins which we have reviewed also involve cases where the trial court revised or reconsidered its own prior ruling. The Unites States Supreme Court cited Collins in Smith v. Massachusetts.[27] In Smith, the trial court reversed its earlier dismissal of one of the charges against the defendant. The Supreme Court held that the reversal constituted double jeopardy. However, in doing so, it noted that Massachusetts had not adopted any rule regarding the finality of mid-trial oral rulings.[28] The court acknowledged that, as a general matter, state law may prescribe that a judge's mid-trial rulings can be reconsidered.[29] While it could find no instance in which a state had done so by statute or rule, it pointed out that case law in some states, including Washington, defines the limitations of oral dismissal or acquittal.[30]
¶ 34 The present case is distinguishable from Smith, Collins, and the unpublished cases citing Collins. Here, the trial court did not reverse its own dismissal of Hedlund's DUI and reckless driving charges. The dismissal was reversed on review by the superior court, which adopted the City's depiction of the trial court's action as a dismissal. The application for writ of review the City presented to the superior court sought review of the trial court's decision to grant Hedlund's motion to dismiss. It presented the trial court's ruling as final. The superior court ruled as if the trial court ruling were final: In its order on writ of review, the superior court ordered the ruling reversed, and the charges reinstated. The City returned to trial and prevailed on the basis of that ruling. Having presented the ruling as final in its application for writ of review, the City cannot now claim that the ruling was not final.
¶ 35 The trial court ruling depicted in the City's application for writ of review and the superior court's subsequent order does not evince the ambiguity the Collins holding was meant to alleviate. We hold that reinstating the charges against Hedlund placed her in double jeopardy. On this additional basis, we reverse her conviction for DUI as an accomplice.
¶ 36 REVERSED.
WE CONCUR: MARLIN APPELWICK, C.J., and RONALD COX, J.
NOTES
[1] Castro v. Stanwood Sch. Dist. No. 401, 151 Wash.2d 221, 224, 86 P.3d 1166 (2004).
[2] RCW 9A.08.020(3).
[3] RCW 9A.08.020(5). The section reads in full:

"Unless otherwise provided by this title or by the law defining the crime, a person is not an accomplice in a crime committed by another person if: (a) He is a victim of that crime; or (b) He terminates his complicity prior to the commission of the crime, and either gives timely warning to the law enforcement authorities or otherwise makes a good faith effort to prevent the commission of the crime."
[4] 154 Wash.2d 596, 115 P.3d 281 (2005).
[5] Jacobs, 154 Wash.2d at 600, 115 P.3d 281.
[6] 146 Wash.2d 1, 9, 43 P.3d 4 (2002).
[7] Ecology, 146 Wash.2d at 9-10, 43 P.3d 4.
[8] 114 Wash.2d 828, 835, 791 P.2d 897 (1990).
[9] Fjermestad, 114 Wash.2d at 835, 791 P.2d 897.
[10] 27 Wash.App. 223, 615 P.2d 1302 (1980).
[11] Hansen, 27 Wash.App. at 226, 615 P.2d 1302.
[12] Report of Proceedings (RP) (Feb. 5, 2003) at 31.
[13] RCW 46.61.5055(5)(a).
[14] State v. Leming, 133 Wash.App. 875, 881, 138 P.3d 1095 (2006).
[15] U.S. Const. amend. V.
[16] Wash. Const. art. I, § 9.
[17] State v. Gocken, 127 Wash.2d 95, 107, 896 P.2d 1267 (1995).
[18] State v. Graham, 153 Wash.2d 400, 404, 103 P.3d 1238 (2005).
[19] 368 F.3d 963 (7th Cir.2004).
[20] Parker, 368 F.3d at 969. Parker explicitly disclaimed a double jeopardy argument, thus depriving the trial court the opportunity to address the issue. The reviewing court concluded the argument was waived and thus not reviewable on appeal. No such explicit waiver is at issue in the present case.
[21] State v. Tvedt, 153 Wash.2d 705, 709 n. 1, 107 P.3d 728 (2005).
[22] 112 Wash.2d 303, 771 P.2d 350 (1989).
[23] Collins, 112 Wash.2d at 308, 771 P.2d 350.
[24] Collins, 112 Wash.2d at 308, 771 P.2d 350.
[25] Collins, 112 Wash.2d at 308, 771 P.2d 350.
[26] 98 Wash.2d 542, 656 P.2d 497 (1983).
[27] 543 U.S. 462, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005).
[28] Smith, 543 U.S. at 471, 125 S.Ct. 1129.
[29] Smith, 543 U.S. at 470, 125 S.Ct. 1129.
[30] Smith, 543 U.S. at 470-71, 125 S.Ct. 1129.